## Appeal of MOSER AND WACKER, INC.

Docket No. 4475.     Decided September 25, 1926.

1. On the evidence, *held*, that the taxpayer was a personal service corporation during the years 1918, 1919, and 1920.

2. " Trading as a principal," as the phrase is used in section 200 of the Revenue Act of 1918, does not embrace " trading " in the " services " of persons, regardless of whether such persons are the corporation's stockholders, employees or independent contractors.

*James A. Taylor, Esq.* and *C. R. Trobridge, C. P. A.*, for the petitioner.

*J. Arthur Adams, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency in income and excess profits taxes for the years 1918 to 1920, inclusive, in the amount of $5,516.01. The deficiency arises from the Commissioner's refusal to accord the taxpayer classification as a personal service corporation.

### FINDINGS OF FACT.

The taxpayer is a New York corporation with its principal place of business at 9 East 7th Street, New York City.

The taxpayer was engaged in the business of embroidery designing. The creation of such designs is a highly skilled operation requiring extensive technical training and experience and an appreciation of color or contrast of various cloths.

The market for these designs lies among shirtwaist, glove and silkwear manufacturers. Designs consisting of drawings in colors are submitted to a prospective customer and upon the selection of one the customer orders what is known as a " sample order." A " sample order " is a limited number of the design worked on cloth and its purpose is to determine exactly how the design appears when embroidered.

Upon receiving a sample order the taxpayer makes a pattern of the design and then a detailed chart showing the exact number of stitches, the position of each and its color. The design, pattern, chart and thread, together with the material which is furnished by the customer, are then taken to an " embroidery operator," who produces the sample order.

Embroidery operators are individuals owning their own machines and specializing in the production of sample orders such as have been described. They are paid on the basis of the number of stitches required by the design, the price varying from 69 cents to 71 cents per hundred stitches according to the character of the work. The operators, of whom there are about twelve, work for anyone who

furnishes them such employment. They are not capable of creating designs.

By means of the chart above described the number of stitches is determinable in advance of the execution of the sample order and accordingly the price to be charged by the operator is likewise known.

Upon completion of the sample order the operator is paid by the taxpayer. The taxpayer then bills the customer for the exact amount paid the operator, plus the actual cost of the thread, which is furnished by the taxpayer, and the price of the design.

If the sample order demonstrates that the design is satisfactory the customer purchases the design. If it is considered unsuitable changes are made in the design or another design is selected and made up in a sample order. The customer reimburses the taxpayer's expense for the sample order even if he does not purchase the design.

The taxpayer's stockholders and officers during the years involved were:

| Name | Jan. 1 to Aug. 29, 1918 | | Aug. 29, 1918, to Dec. 31, 1920 | |
|---|---|---|---|---|
| | Office held | Number of shares | Office held | Number of shares |
| Christian Gafafer | Treasurer | 220 | President | 399 |
| R. Maier | | 100 | Treasurer | 399 |
| Andrew Moser | President | 478 | | None. |
| C. Rubin | | 2 | | 2 |
| | | 800 | | 800 |

The par value of the shares was $25 each, making the total par value of the capital stock $20,000.00.

Gafafer and Moser were designers, and in addition the former solicited the trade.

Maier supervised the production of sample orders by the operators, instructing them in the technical execution of the designs. In addition he conferred with the designers relative to the artistic features of their work and also directed such employees as the firm had. He is an expert in the selection of silks and dyes.

C. Rubin was a stockholder in order that he might qualify as a director.

The taxpayer's principal stockholders were regularly engaged in the business, devoting all of their time to it.

Two girls were employed for the purpose of inspecting sample orders as received from the operators and checking them against the designs to insure their proper execution.

The only other employee was a man who assisted Gafafer in soliciting the trade. He was paid on a commission basis. Total

salaries and commissions paid these employees were, during 1918, $4,856.82; during 1919, $5,977.12; and during 1920, $4,718.16.

The taxpayer at various times bought materials from which its designers could get ideas. These purchases consisted of wall paper, prints, woven goods, etc. Expenditures for such materials were: 1918, $187.95; 1919, $63.20; 1920, $18.

Balance sheets of the taxpayer show at the close of each of the years:

|  | 1917 | 1918 | 1919 | 1920 |
|---|---|---|---|---|
| **ASSETS** | | | | |
| Cash | $3,259.87 | $2,533.51 | $2,611.75 | $509.50 |
| Accounts receivable | 7,561.81 | 9,748.56 | 6,060.78 | 11,354.19 |
| Merchandise | 800.50 | 1,160.40 | 3,244.67 | 775.82 |
| Patterns | 15,000.00 | 15,000.00 | 15,000.00 | 15,000.00 |
| | 26,622.18 | 28,442.47 | 26,917.20 | 27,639.51 |
| **LIABILITIES** | | | | |
| Accounts payable | 1,038.27 | 2,720.37 | 2,834.03 | 439.32 |
| Due stockholders | 6,000.00 | 3,716.25 | 360.00 | |
| Capital | 20,000.00 | 20,000.00 | 20,000.00 | 20,000.00 |
| Surplus | ¹416.09 | 2,005.85 | 3,723.17 | 7,200.19 |
| | 26,622.18 | 28,442.47 | 26,917.20 | 27,639.51 |

¹ Denotes red figure.

The asset account designated "patterns" consisted of patterns accumulated over many years by the taxpayer's stockholders when operating as partners, and valued at $15,000 upon organization of the taxpayer merely for the purpose of paying them in for capital stock. The actual value of these patterns is nominal even to the taxpayer and they have no practical value to others.

"Merchandise" in the asset account represents the dyes, paper, etc., used in drawing the designs and thread furnished the embroidery operators for the production of the sample orders.

Among the expense deductions claimed by the taxpayer, in addition to others already noted, were:

| Item | 1918 | 1919 | 1920 |
|---|---|---|---|
| Materials | $8,514.14 | $13,304.94 | |
| Payment to embroidery | | | $36,350.22 |
| Operators | 30,268.41 | 32,618.96 | |

Gross income, total expense, and net income were:

|  | Gross income | Total expense | Net income |
|---|---|---|---|
| 1918 | $64,495.83 | $55,685.27 | $8,810.56 |
| 1919 | 81,053.64 | 72,373.47 | 8,680.17 |
| 1920 | 70,091.56 | 60,505.04 | 9,586.52 |

The taxpayer's only equipment, beyond office furniture, is a camera obscurer. This device is used to project enlargements of a design so that the stitches may be charted.

### OPINION.

MARQUETTE: Section 200 of the Revenue Act of 1918, in defining a personal service corporation, sets forth four conditions, all of which must concur to entitle a corporation to classification thereunder, and these conditions are each a question of fact.

The term means a corporation (1) whose income is to be ascribed primarily to the activities of the principal owners or stockholders; (2) whose principal stockholders are regularly engaged in the active conduct of the affairs of the corporation; (3) in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include (4) any foreign corporation, or any corporation 50 per centum or more of whose gross income consists of gains, profits, or income derived from trading as a principal, etc.

Upon the facts found we are so clearly of opinion that the taxpayer meets the second and third of these requirements that no discussion of them will be made.

Was the income of the taxpayer ascribable primarily to the activities of its principal stockholders? We believe that it was. Considering the nature of the business and the relative importance of the designing and supervision on one side, and the mechanical execution of the design on the other, it is apparent that the taxpayer's income is attributable to the skill of its principal stockholders. Without such men the corporation would have no basis for existence. The designing of Gafafer and Moser, and the expert services of Maier in the selection of dyes and silk thread and the supervision of the operators, are the essential factors to which the corporation owes its success.

We are now left with the necessity of determining whether or not " 50 per centum or more " of the " gross income consists of gains, profits or income derived from trading as a principal." This involves determination of the intendment of the phrase " trading as a principal," since computations which it is unnecessary to detail here reveal that if the taxpayer was so engaged it must be denied the classification sought, under the " 50 per centum " clause.

That the taxpayer was a " principal " admits of no dispute since it acted solely on its own behalf.

We have now to resolve the meaning of the word " trading " to determine what its use in the section of the Act under discussion contemplated. That the taxpayer bought the services of the oper-

ators is clear, as is the fact that it purchased the thread used. It did not purchase the sample orders and it did not manufacture them— it merely hired the operators to fabricate them. The operators were independent contractors.

The value of the design and of the sample orders was not in the materials which composed them but in the artistic composition of the materials due to the taxpayer's treatment of them.

Taking this view of the nature of the sample orders, it follows that what the taxpayer furnished its customers was the service of the operators, plus the thread, an immaterial item, and the service of itself as represented in the creation of the design and the supervision of the operators.

The taxpayer in the broad sense of the term was "trading" in personal services. Every lawyer, physician or engineer who uses the services of an employee or who has a brief typed by a public stenographer, a test made by a chemist or a plan traced by a draughtsman, is in this sense "trading" in the services of other people. Would it be seriously contended that such "trading" was contemplated by section 200? We think not.

In short, we hold, that service or labor of the sort performed by the operators and the taxpayer's officers is not the subject of such "trading" as section 200 of the Revenue Act of 1918 contemplated and therefore that this taxpayer was not "*trading* as a principal." *Appeal of Rhoades, Brownson & Kampman, Inc.*, 2 B. T. A. 194, 199.

We are of opinion that the taxpayer was a personal service corporation during the years 1918, 1919, and 1920.

*Judgment for the petitioner.*

PHILLIPS concurs in the result only.