*1024 OPINION.
Marquette :
Section 200 of the Revenue Act of 1918, in defining a personal service corporation, sets forth four conditions, all of which must concur to entitle a corporation to classification thereunder, and these conditions are each a question of fact.
The term means a corporation (1) whose income is to be ascribed primarily to the activities of the principal owners or stockholders; (2) whose principal stockholders are regularly engaged in the active conduct of the affairs of the corporation; (3) in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include (4) any foreign corporation, or any corporation 50 per centum or more of whose gross income consists of gains, profits, or income derived from trading as a principal, etc.
Upon the facts found we are so clearly of opinion that the taxpayer meets the second and third of these requirements that no discussion of them will be made.
Was the income of the taxpayer ascribable primarily to the activities of its principal stockholders? We believe that it was. Considering the nature of the business and the relative importance of the designing and supervision on one side, and the mechanical execution of the design on the other, it is apparent that the taxpayer’s income is attributable to the skill of its principal stockholders. Without such men the corporation would have no basis for existence. The designing of Gafafer and Moser, and the expert services of Maier in the selection of dyes and silk thread and the supervision of the operators, are the essential factors to which the corporation owes its success.
We are now left with the necessity of determining whether or not “ 50 per centum or more ” of the “ gross income consists of gains, profits or income derived from trading as a principal.” This involves determination of the intendment of the phrase “ trading as a principal,” since computations which it is unnecessary to detail here reveal that if the taxpayer was so engaged it must be denied the classification sought, under the “ 50 per centum ” clause.
That the taxpayer was a “ principal ” admits of no dispute since it acted solely on its own behalf.
We have now to resolve the meaning of the word “ trading ” to determine what its use in the section of the Act under discussion contemplated. That the taxpayer bought the services of the oper *1025 ators is clear, as is the fact that it purchased the thread used. It did not purchase the sample orders and it did not manufacture them— it merely hired the operators to fabricate them. The operators were independent contractors.
The value of the design and of the sample orders was not m the materials which composed them but in the artistic composition of the materials due to the taxpayer’s treatment of them.
Taking this view of the nature of the sample orders, it follows that what the taxpayer furnished its customers was the service of the operators, plus the thread, an immaterial item, and the. service of itself as represented in the creation of the design and the supervision of the operators.
The taxpayer in the broad sense of the term was “ trading ” in personal services. Every lawyer, physician or engineer who uses the services of an employee or who has a brief typed by a public stenographer, a test made by a chemist or a plan traced by a draughts-man, is in this sense “ trading ” in the services of other people. Would it be seriously contended that such “ trading ” was contemplated by section 200 ? We think not.
In short, we hold, that service or labor of the sort performed by the operators and the taxpayer’s officers is not the subject of such “ trading ” as section 200 of the [Revenue Act of 1918 contemplated and therefore that this taxpayer was not “ trading as a principal.” Appeal of Rhoades, Brownson & Kampman, Inc., 2 B. T. A. 194, 199.
We are of opinion that the taxpayer was a personal service corporation during the years 1918, 1919, and 1920.

Judgment for the petitioner.

Phillips concurs in the result only.